**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Linda Bustamante,<br><br>                  Plaintiff,<br><br>vs.<br><br>Michael J. Astrue, Commissioner of Social Security Administration,<br><br>                  Defendant. | No. CV-12-00075-PHX-NVW<br><br>**ORDER** |

Plaintiff Linda Bustamante seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied her disability insurance benefits under sections 216(i) and 223(d) of the Social Security Act. Because the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and is not based on legal error, the Commissioner's decision will be affirmed.

**I.    BACKGROUND**

    **A.    Factual Background**

Bustamante was born in November 1954. She did not finish high school or obtain a GED, but received vocational training in hand soldering and is able to communicate in English. She worked as a housekeeper and as a solderer/assembler, but has not worked since her employment was terminated in January 2007.

Bustamante is diabetic and morbidly obese and has been diagnosed with hypertension, arthritis, depression, fibromyalgia, and coronary heart disease. In March

2006, she underwent emergency three-vessel bypass surgery following a heart attack. In February 2009, she was hospitalized for an intentional overdose of pain medications. She had a knee replacement in 1999. During the administrative hearing before the ALJ, Bustamante's counsel stated that her primary physical impairment is fibromyalgia with associated depression, anxiety, and headaches and that her cardiac condition is relatively stable following the bypass surgery.

Bustamante reports that she is able to prepare meals, vacuum, sweep, do laundry, shop for groceries, drive, manage paying bills and bank accounts, and take care of personal grooming.

### B. Procedural History

On December 10, 2007, Bustamante protectively applied for disability insurance benefits. On December 22, 2009, she appeared with her attorney and testified at a hearing before the ALJ. A vocational expert also testified. She alleges disability since February 1, 2007.

On June 25, 2010, the ALJ issued a decision that Bustamante was not disabled within the meaning of the Social Security Act. The Appeals Council denied her request for review of the hearing decision, making the ALJ's decision the Commissioner's final decision. On January 12, 2012, Bustamante sought review by this Court.

## II. STANDARD OF REVIEW

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* In determining whether

substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

The ALJ is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). In reviewing the ALJ's reasoning, the court is "not deprived of [its] faculties for drawing specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

### III.  FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but at step five, the burden shifts to the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At the step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity and determines whether the claimant is still capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not

disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work based on the claimant's residual functional capacity, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

## IV. ANALYSIS

At step one, the ALJ found that Bustamante meets the insured status requirements of the Social Security Act through December 31, 2011, and that she has not engaged in substantial gainful activity since February 1, 2007. At step two, the ALJ found that Bustamante has the following severe impairments: diabetes mellitus, hypertension, arthritis, coronary artery disease status post triple heart bypass surgery, depression, fibromyalgia, and morbid obesity. At step three, the ALJ concluded that Bustamante's impairments did not meet or equal the criteria of any of the impairments listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404.

At step four, the ALJ assessed Bustamante as having the residual functional capacity to perform a restricted range of light work:

> Specifically, the claimant can occasionally lift and/or carry up to 20 pounds, frequently lift and/or carry up to 10 pounds, stand and/or walk for a total of about 6 hours in an 8-hour work day, sit for a total of about 6 hours in an 8-hour workday and engage in unlimited pushing and/or pulling. She can occasionally crouch and crawl. She can frequently climb ramps/stairs, balance, stoop and kneel. She can never climb ladders/ropes/scaffolds. The claimant must avoid concentrated exposure to extreme cold, extreme heat and hazards. In addition, she has mild difficulties in maintaining concentration, persistence or pace.

The ALJ found that Bustamante is capable of performing past relevant work as a solderer/assembler and housekeeper.

### A.   The ALJ Did Not Err in Weighing Medical Source Evidence.
#### 1.   Legal Standard

In weighing medical source opinions in Social Security cases, the Ninth Circuit distinguishes among three types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, more weight should be given to the opinion of a treating physician than to the opinions of non-treating physicians. *Id.* A treating physician's opinion is afforded great weight because such physicians are "employed to cure and [have] a greater opportunity to observe and know the patient as an individual." *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987). Where a treating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons, and where it is contradicted, it may not be rejected without "specific and legitimate reasons" supported by substantial evidence in the record. *Lester*, 81 F.3d at 830. Moreover, the Commissioner must give weight to the treating physician's subjective judgments in addition to his clinical findings and interpretation of test results. *Id.* at 832-33.

Further, an examining physician's opinion generally must be given greater weight than that of a non-examining physician. *Id.* at 830. As with a treating physician, there must be clear and convincing reasons for rejecting the uncontradicted opinion of an examining physician, and specific and legitimate reasons, supported by substantial evidence in the record, for rejecting an examining physician's contradicted opinion. *Id.* at 830-31.

The opinion of a non-examining physician is not itself substantial evidence that justifies the rejection of the opinion of either a treating physician or an examining physician. *Id.* at 831. "The opinions of non-treating or non-examining physicians may

also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas*, 278 F.3d at 957. Factors that an ALJ may consider when evaluating any medical opinion include "the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; [and] the specialty of the physician providing the opinion." *Orn*, 495 F.3d at 631.

Moreover, Social Security Rules expressly require a treating source's opinion on an issue of a claimant's impairment be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2). If a treating source's opinion is not given controlling weight, the weight that it will be given is determined by length of the treatment relationship, frequency of examination, nature and extent of the treatment relationship, relevant evidence supporting the opinion, consistency with the record as a whole, the source's specialization, and other factors. *Id.*

Finding that a treating physician's opinion is not entitled to controlling weight does not mean that the opinion should be rejected:

> [A] finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. §404.1527. . . . In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

*Orn*, 495 F.3d at 631-32 (quoting Social Security Ruling 96-2p). Where there is a conflict between the opinion of a treating physician and an examining physician, the ALJ

- 6 -

may not reject the opinion of the treating physician without setting forth specific, legitimate reasons supported by substantial evidence in the record. *Id.* at 632.

### 2. Sharon Steingard, D.O.

On September 23, 2008, Dr. Steingard performed a psychiatric evaluation of Bustamante at the request of the Arizona Department of Economic Security Disability Determination Services. She diagnosed depressive disorder not otherwise specified and made the following findings:

> Linda Bustamante . . . reports that she has had problems with her mood, which she believes stretch back into her twenties . . . . She says that depression can come and go. She varied between claiming to be depressed for days at a time and being depressed for years. Her sleep is poor. She complains of problems with concentration and memory. . . . Mental Status Examination was notable in that she did seem to be depressed. She was tearful and crying briefly. Her affect was blunted. She reports some recent suicidal ideation without plan or intent. She had not wished to pursue emergency psychiatric care and I did not feel that there were grounds for a petition. I think that she can manage benefits, if deemed eligible to receive them.

Dr. Steingard noted that Bustamante did not appear to be cognitively impaired, but she likely would need "a lot of extra supervision" on the job because she needed even simple instructions repeated. Dr. Steingard predicted that Bustamante would have difficulty maintaining concentration due to depression. At the administrative hearing, the vocational expert testified that Bustamante would not be able to work if she could not concentrate and needed "a lot of extra supervision," but until the ALJ brought it to his attention, the vocational expert did not realize that Dr. Steingard's psychiatric evaluation was conducted before Bustamante had received any psychological treatment.

The ALJ found that the restrictions opined by Dr. Steingard were not entitled to significant weight because she found no cognitive deficits, her opinion was incongruent

- 7 -

with Bustamante's noncompliance with treatment, and her opinion was not supported by the evidence as a whole. The ALJ therefore assigned greater weight to the actual treatment records.

Bustamante's medical records show that Bustamante sought treatment in April 2008 for a four-day long headache, was prescribed Cymbalta for depression, and was advised to access Magellan for mental health services. She was hospitalized from February 14, 2009, to February 16, 2009, because of an intentional overdose of Vicodin, Darvocet, and methocarbamol. On February 27, 2009, she underwent an intake assessment at Terros Behavioral Health Clinic. She was seen by Mark Poulin, PNP, on April 3, 2009, and May 22, 2009. She cancelled her July 8, 2009 appointment and requested that Terros close her case on July 20, 2009. Although the records show possible depression, depressed affect, and reports of a difficult home situation, they do not indicate that Bustamante had difficulty concentrating or understanding simple instructions.

Thus, the ALJ provided specific and legitimate reasons, supported by substantial evidence in the record, for not assigning an examining physician's contradicted opinion significant weight and did not err by doing so.

### 3. Nonexamining Agency Reviewers

Bustamonte contends that the ALJ erred by relying on the opinions of nonexamining agency reviewers.

The ALJ gave substantial weight to the State Agency medical consultants who reviewed Bustamante's file and determined her physical residual functional capacity because it was "supported by the great weight of the evidence of record." Dr. R. Levy provided a physical residual functional capacity assessment dated March 11, 2008. The assessment indicated that Bustamante's primary diagnosis was coronary artery disease and other alleged impairments were diabetes mellitus, hypertension, and obesity. Dr.

- 8 -

Levy found the following physical limitations: occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk about 6 hours in an 8-hour workday, sit about 6 hours in an 8-hour workday, unlimited pushing or pulling, frequently climb ramps/stairs, never climb ladder/rope/scaffolds, frequently balancing, frequently stooping, frequently kneeling, occasionally crouching, occasionally crawling, and avoid concentrated exposure to extreme cold, extreme heat, and hazards (machinery, heights, etc.)  On September 30, 2008, a different medical consultant reviewed the evidence in Bustamante's file and affirmed the March 11, 2008 residual functional capacity assessment. The ALJ adopted Dr. Levy's physical residual functional capacity assessment. Although Bustamante claims that the ALJ erred by giving substantial weight to the opinions of these two non-examining agency reviewers, she does not identify any evidence in the record that contradicts their assessment or the ALJ's physical residual functional capacity assessment.

Bustamante also criticizes the ALJ for relying on a psychiatric review by Patricia Neuman, Ph.D., dated September 30, 2008, in questioning the vocational expert. Dr. Neuman found Bustamante's records showed she had no restriction of activities of daily living, no difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence, or pace. Dr. Neuman noted specific observations from Dr. Steingard's examination, including that Bustamante had satisfactory attention and limited insight and judgment. Dr. Neuman concluded that Bustamante's conditions "would cause her minor limitations but nothing that would markedly limit her work abilities." Dr. Neuman therefore concluded that Bustamante's depression was not severe.

Dr. Steingard did not opine that Bustamante's depression was severe or that it would impose marked limitations on her ability to work. In fact, she did not opine at all regarding the severity of Bustamante's depression. Rather, she opined that Bustamante likely would need "a lot of extra supervision" on the job because she needed even simple

instructions repeated and likely would have difficulty maintaining concentration due to depression. She did not opine regarding the degree of difficulty Bustamante likely would have maintaining concentration. Dr. Neuman's opinion is therefore not inconsistent with that of Dr. Steingard. The ALJ incorporated their opinions into her residual functional capacity assessment by adding that Bustamante "has mild difficulties in maintaining concentration, persistence or pace."

Thus, the ALJ did not err by relying on the opinions of nonexamining agency reviewers.

> **B.     The ALJ Did Not Err by Discounting the Established Diagnosis of Fibromyalgia Based on the ALJ's Own Opinion.**

Bustamante contends that statements made by the ALJ during the administrative hearing show that the ALJ was biased against claimants with fibromyalgia or at least did not believe the disorder was legitimate. The ALJ said that she believed that the diagnosis of fibromyalgia was overused, diagnosing fibromyalgia by assessing trigger points does not indicate the severity of the condition, and she preferred to focus on a claimant's other medical conditions. Thus, the ALJ's comments at the hearing could indicate that she intended to disregard Bustamante's fibromyalgia altogether and consider only on depression, anxiety, and diabetes. However, read in context, the ALJ's comments were made in response to Bustamante's counsel's opening statement that her primary physical impairment is fibromyalgia and her depression and anxiety were associated with the fibromyalgia. The ALJ may have intended to suggest that counsel not limit his focus to fibromyalgia.

Moreover, the ALJ did not reject the diagnosis of fibromyalgia. Her hearing decision includes fibromyalgia among Bustamante's severe impairments. It states that Dr. Mallace, the treating rheumatologist, evaluated Bustamante in April 2008, and

"[p]hysical examination confirmed diffuse trigger point tenderness, which along with sleep deprivation and depression, was compatible with fibromyalgia."

Therefore, the ALJ did not err by "discounting the established diagnosis of fibromyalgia based on the ALJ's own opinion."

### C. The ALJ Did Not Err in Evaluating Bustamante's Credibility.

In evaluating the credibility of a claimant's testimony regarding subjective pain or other symptoms, the ALJ is required to engage in a two-step analysis: (1) determine whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce some degree of the pain or other symptoms alleged; and, if so with no evidence of malingering, (2) reject the claimant's testimony about the severity of the symptoms only by giving specific, clear, and convincing reasons for the rejection. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Contrary to the Commissioner's contention, *Bunnell v. Sullivan*, 947 F.2d 341 (9th Cir. 1991), does not permit finding subjective symptom testimony not credible without articulating clear and convincing reasons. The Commissioner correctly quotes *Bunnell* as stating an ALJ must make specific findings, supported by the record, to support his conclusion that a claimant's allegations of severity are not credible. *See id.* at 345. But *Bunnell* does not address whether the reasons must be clear and convincing. Rather, it addresses whether an ALJ may discredit a claimant's allegations of the severity of pain solely on the ground that the allegations are unsupported by objective medical evidence.

The ALJ found that it is undisputed that Bustamante has pain and depression, but her allegations of greater restrictions and limitations than those included in the ALJ's residual functional capacity assessment were not supported by the evidence as a whole, and Bustamante's subjective complaints and limitations were not fully persuasive. Specifically, the ALJ found that Bustamante's longitudinal medical history, objective

- 11 -

medical evidence, abnormal clinical findings, and the observations of her treating and examining physicians were not consistent with her allegations of disability.

The ALJ noted that during the two years preceding her alleged onset date of disability, February 1, 2007, she successfully worked as an assembler and solderer except for three months after her heart attack and bypass surgery in March 2006. Although she stopped working on February 1, 2007, she did not require hospitalization or indicate a worsening of pain around that date. The ALJ's hearing decision further stated that the medical record shows limited treatment for fibromyalgia, which does not support allegations of debilitating pain. The ALJ also noted that the Arizona Pain Center treatment records do not support Bustamante's allegations of disabling pain, identifying specific examples, including her reports that injections had been beneficial. Moreover, the ALJ observed that no treating or examining physician indicated any medical reason for Bustamante's activity to be limited, and her testimony regarding limited activity was not consistent with her reported activities, such as household chores, cooking, and grocery shopping.

The ALJ also considered that Bustamante had not complied with cardiac rehabilitation ordered by her cardiologist, medication and diet recommendations for diabetes, prescriptions for hypertension medication, medical advice to seek evaluation and treatment for hypertension and depression, physical therapy for back pain, and treatment for depression. The ALJ further considered that Bustamante had been inconsistent in her explanations regarding why she stopped working February 1, 2007, and inconsistent in reporting her primary disabling impairment.

Therefore, the ALJ provided specific, clear, and convincing reasons for rejecting Bustamante's testimony about the severity of her symptoms and did not err in evaluating her credibility.

IT IS THEREFORE ORDERED that the final decision of the Commissioner of Social Security is affirmed. The Clerk shall enter judgment accordingly and shall terminate this case.

Dated this 10th day of December, 2012.

_____
Neil V. Wake
United States District Judge